IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|                                    |   |                      |
|------------------------------------|---|----------------------|
| RONALD D. TONEY,                   |   |                      |
|     Plaintiff,                     |   |                      |
| v.                                 |   | No. 07-2467-JPM/dkv  |
| SWIFT TRANSPORTATION               |   |                      |
| d/b/a SWIFT DRIVER TRAINING        |   |                      |
| ACADEMY,                           |   |                      |
|     Defendant.                     |   |                      |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ORDER OF DISMISSAL
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

On July 9, 2007, Plaintiff Ronald D. Toney filed a pro se employment discrimination complaint under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111, et seq., alleging that Defendant Swift Transportation d/b/a Swift Driver Training Academy ("Swift") failed to train and employ him because of his disability.[1] On October 17, 2007, Defendant Swift filed an answer to the complaint. On July 17, 2008, Defendant filed a motion for summary judgment, along with a supporting memorandum and exhibits, which include the Affidavit of Tim McLain, National Academy Director for Swift (Exhibit 1), portions of the deposition of Ronald Toney (Exhibit 2), and Affidavit of Donald Diggins, Human

---

[1] Plaintiff's complaint is clear that this action presents claims under the ADA. Defendant's motion for summary judgment addresses potential claims under Title VII and for slander. Plaintiff did not amend his complaint to raise any additional claims, therefore, the Court declines to address claims not raised in Plaintiff's complaint.

Resource Manager for Swift (Exhibit 3). On July 23, 2008, Plaintiff responded to the motion for summary judgment with a supporting memorandum and fourteen (14) exhibits. Defendant replied to Plaintiff's response on August 18, 2008, attaching additional exhibits, which include the Affidavit of Scott Maldonado, Director of Driver Services and Recruiting for Swift (Exhibit 4) and additional portions of Plaintiff's deposition (Exhibit 5).

I. <u>JURISDICTION</u>

This Court has original federal question jurisdiction of cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

II. <u>FACTS</u>

The following undisputed facts appear in the record.

1. Defendant Swift is a trucking company providing transportation services for freight, including manufactured goods, merchandise, paper products, food products, beverages, and building materials. (Exhibit 1, McLain Affidavit, ¶ 3)

2. Persons who are licensed to drive commercial motor vehicles may seek employment with Swift as truck drivers. (Exhibit 1, McLain Affidavit, ¶¶ 4, 11)

3. To assist prospective employees in obtaining a license to drive commercial motor vehicles, Swift has driving academies at various locations throughout the United States. (Exhibit 1, McLain Affidavit, ¶¶ 5-6)

4. Swift has a driving academy located in Millington, Tennessee. (Exhibit 1, McLain Affidavit, ¶ 5; Plaintiff's complaint, ¶ 4)

5. Applicants to an academy must pass a Department of Transportation physical examination and a drug-screening test. (Exhibit 1, McLain Affidavit, ¶¶ 8-13)

6. Persons who successfully complete the training and meet all federal requirements may be hired as Swift drivers, but

2

applying to a driver-training academy does not guarantee employment with Swift. (Exhibit 1, McClain Affidavit, ¶ 11)

7. On or about July 27, 2006, Plaintiff submitted an application to Swift's driving academy in Millington, Tennessee. (Exhibit 2, Toney Deposition, pp. 102, 104-05; Exhibit 3, Diggins Affidavit, Employment Application (A))

8. Plaintiff understood that employment with Swift was subject to successful completion of the application process and the driver-training program. (Exhibit 2, Toney Deposition, pp. 127-28)

9. On August 2, 2006, Plaintiff provided a urine specimen for drug testing. (Exhibit 2, Toney deposition, pp. 137-38)

10. Following the collection of the urine specimen, Plaintiff saw a medical examiner for a physical assessment (Exhibit 2, Toney Deposition, pp. 140-41)

11. Because Plaintiff wears a prosthetic leg below the knee, he checked "yes" in response to the question on his application about whether he had a missing or impaired limb. (Exhibit 2, Toney Deposition, pp. 143-44; Plaintiff's Complaint, ¶ 10)

12. The medical examiner showed Plaintiff the physical-examination form, which, according to Plaintiff, indicated that because of his missing limb, a skill performance evaluation certificate ("SPE") was required. (Exhibit 2, Toney Deposition, pp. 145-46)

13. The SPE is not a requirement of Defendant, but is required by the Department of Transportation's regulations which implement the Federal Motor Carrier Safety Act, 49 C.F.R. §391.41(b).

14. Plaintiff understood that he needed to obtain the SPE. (Exhibit 2, Toney Deposition, pp. 146-47)

15. Plaintiff concedes that the applicable regulations allow two options for a person to obtain a SPE: he can submit a joint application with a motor carrier or he can submit a unilateral letter of application. (Exhibit 2, Toney Deposition, pp. 218-19)

16. Plaintiff admits that he could have obtained the SPE on his own, provided he could find a tractor to drive, but maintains that he could not afford this and that other driver-training programs would not have accepted him because of his credit problems. (Exhibit 2, Toney deposition, pp. 166-67, 192-93)

17. Plaintiff alleges that, despite Swift's determination that Plaintiff needed the SPE, Swift was required to give him a medical assessment and was required to allow him to take the road test. (Exhibit 2, Toney deposition, pp. 150-52)

18. Plaintiff admits that the applicable regulation does not require Swift to allow him to finish the assessment and the road test, but asserts that there is nothing in the regulation "telling them to stop." (Exhibit 2, Toney Deposition, pp. 177-79)

19. According to Plaintiff, he was referred to the Program Director, who also explained that Plaintiff needed an SPE. (Exhibit 2, Toney Deposition, pp. 200-02)

20. Plaintiff admits that Defendant's Program Director "didn't say [Plaintiff] couldn't complete the program, you know, we can't hire you. He said we can't train you unless you get a SPE." (Exhibit 2, Toney Deposition, pp. 202-03)

21. On or about August 7, 2006, the Medical Review Officer contacted Plaintiff by telephone to inform him that his test results were positive for a controlled substance. (Exhibit 2, Toney Deposition, pp. 229-30; <u>see</u> Attachment to Plaintiff's Complaint, part 1 of 2)

22. The Medical Review Officer asked Plaintiff if he wished to have the sample retested, but Plaintiff declined to do so. (Exhibit 2, Toney Deposition, pp. 230-33)

23. On May 17, 2007, Plaintiff obtained his own medical evaluation from Dr. Vincent. The documentation from that examination indicates that Plaintiff needed to obtain a SPE. (Exhibit 2, Toney Deposition, pp. 22-25; <u>see</u> Attachment to Plaintiff's Complaint, part 1 of 2)

24. Plaintiff filed a Charge of Discrimination with the EEOC on or about February 6, 2007. (Exhibit 3, Diggins Affidavit, Charge of Discrimination (B))

25. Plaintiff asserted in the EEOC Charge that Defendant discriminated against him because of his disability and the Defendant did so in violation of the ADA. (Exhibit 3, Diggins Affidavit, Charge of Discrimination (B))

26. The EEOC issued a Notice of Charge of Discrimination to Swift, indicating that the ADA was at issue. (Exhibit 3, Diggins Affidavit, EEOC Notice of Charge of Discrimination (C))

27. On April 26, 2007, the EEOC mailed a Dismissal and Notice of Rights to Plaintiff which indicated that the EEOC was unable

to conclude that a violation of the ADA had been established. (Exhibit 3, Diggins Affidavit, EEOC Dismissal and Notice of Rights (D))

28. Plaintiff cannot identify any similarly situated individuals who received more favorable treatment. Plaintiff admits that other persons who could not meet the Department of Transportation's requirements, for reasons such as blood pressure or back issues, also were not permitted to proceed with the driver-training program. (Exhibit 2, Toney Deposition, pp. 264-66)

29. Plaintiff agrees that the drug-test results were relevant to the EEOC investigation of his Charge of Discrimination. (Exhibit 2, Toney Deposition, pp. 291-92)

III. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted if the pleadings and evidence on file show that there is no genuine issue as to any material fact. LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Street v. J.T. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts establishing that there is a genuine issue for trial by showing

that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for that evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108-110-11 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor. See id.

IV. ANALYSIS

Plaintiff Toney alleges that after learning that he wore a prosthesis on his right leg for an amputation below the right knee, Defendant refused him paid training and withdrew a conditional offer of employment without performing an individualized physical assessment.

The grounds for Defendant's motion for summary judgment are:

6

1. Plaintiff cannot establish a _prima_ _facie_ case of disability discrimination because:

   A. Plaintiff is not a "qualified individual with a disability," because Plaintiff did not meet the physical-qualification standards set forth by the Department of Transportation for the position of truck driver;

   B. Plaintiff did not suffer an adverse employment decision;

   C. Defendant has a legitimate non-retaliatory reason for refusing to hire Plaintiff; and

2. Compliance with federal regulations is a defense to the ADA.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity" and "denying employment opportunities to a[n]...employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(A).

When an employee brings an employment discrimination claim under the ADA, he bears the burden of establishing a prima facie case of discrimination. U.S. Postal Serv. Bd. of Gov. v. Aikens, 460 U.S. 711 (1983). In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the Supreme Court set forth a methodology for evaluating evidence in discrimination cases. That methodology has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Tex. Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. at 253.

The Sixth Circuit has set forth the elements of a prima facie case of disability discrimination as follows:

> [A] plaintiff must establish that: "1)he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he was [not hired] solely by reason of his handicap."

See Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 452 (6th Cir. 2004)(citing Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996).

A "disability" under the ADA is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2); Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 193 (2002). "Major [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).

Plaintiff, as a partial amputee, has established by direct evidence that he has a disability under the ADA. However, Plaintiff must do more than show that he is "disabled" within the meaning of the statute. The ADA only prohibits discrimination against a "qualified individual with a disability," not simply any individual with a disability. Plaintiff must establish that he is a "qualified individual with a disability" by showing: (1) that he "satisfies the prerequisites for the position [he holds or desires], such as possessing the appropriate educational background, employment experience, [and] skills..."; and (2) that he "can perform the essential functions of the position held or desired, with or without reasonable accommodation." Burns v. Coca-Cola Enterprises, Inc., 222 F.3d 247, 256 (6th Cir. 2000)(citing Dalton v. Subaru-Isuzu Auto., Inc., 141 F.3d 667, 676 (7th Cir. 1998)); see 29 C.F.R. § 1630.2(m)("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related

9

requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position."). Toney must demonstrate that he possessed the appropriate education, background, employment experience, skills, licenses, etc. qualifying him to be a commercial truck driver. 29 C.F.R. app. § 1630.2(m).

The Court has reviewed the record as a whole and has determined that the first ground of Defendant's motion for summary judgment is dispositive of Plaintiff's claims. Plaintiff cannot establish a <u>prima facie</u> case of disability discrimination because he fails to demonstrate that he is or was otherwise qualified to perform the essential functions of the position of truck driver.

Compliance with Department of Transportation safety regulations is an essential function of the job for a commercial driver. <u>King v. Mrs. Grissom's Salads, Inc.</u>, 187 F.3d 636 (6th Cir. 1999). "When Congress enacted the ADA, it recognized that federal safety rules would limit application of the ADA as a matter of law. The Senate Labor and Human Resources Committee Report on the ADA stated that 'a person with a disability applying for or currently holding a job subject to [DOT standards for drivers] must be able to satisfy these physical qualification standards in order to be considered a qualified individual with a disability' under title I of this legislation." S. Rep. No. 101-116, pp. 27-28 (1990)." <u>Albertsons, Inc. v. Kirkingburg</u>, 527 U.S. 555, 573-74 (1999). Under the ADA, an employer can apply "qualification

standards" that deny a job to an individual with a disability as long as those standards are "job-related and consistent with business necessity." 42 U.S.C. §12113(a); 29 C.F.R. § 1630.15(b)(1). Moreover, an employer may have a defense to "a charge of discrimination if an action is required or necessitated by another Federal law or regulation." 29 C.F.R. § 1630.15(e).

Employment with Defendant Swift required that Plaintiff hold a valid commercial motor vehicle license. Toney had no commercial license, training, or previous experience as a truck driver. He pursued truck driver training through Defendant's driving academy so that he could seek employment as a truck driver. Because Plaintiff was a partial amputee, Defendant's medical examiner, as well as Plaintiff's own examining doctor, notified Plaintiff of the requirement of a SPE certificate to continue with truck driver training. Limb-impaired persons are prohibited from driving commercial vehicles in interstate commerce without a waiver. Clark v. Skinner, 937 F.2d 123, 124 (4th Cir. 1991). Under 49 C.F.R. § 391.41, Physical qualifications for drivers, subsection (b), "A person is physically qualified to drive a commercial motor vehicle if that person – (1) Has no loss of a foot, a leg, a hand, or an arm, or has been granted a skill performance evaluation certificate." The individual must have the SPE certificate to drive a commercial vehicle. Plaintiff Toney did not have the SPE certificate at the time he applied to Defendant's driving academy, therefore, he was not "qualified" to drive a commercial vehicle whether for training or for employment with Defendant Swift as a

11

commercial truck driver. Long v. Chicago Transit Auth., 979 F. Supp. 1214, 1215-17 (N.D. Ill. 1997).

Toney admits that he was not told he "couldn't complete the program" or that he would not be hired by Swift. (Toney dep. at pp. 202-03) Toney was told that Swift could not train him unless he had an SPE. Id. No determination was made that Toney would be unable to perform as a truck driver because of his disability. Rather, Toney failed to obtain the SPE certificate required by the DOT, a prerequisite for the training required to obtain a commercial motor vehicle license. Without the SPE, Plaintiff was unable to drive. Without successful completion of the training, Plaintiff had no commercial license. The conditional offer of employment by Swift was contingent upon Plaintiff's ability to successfully complete the training and obtain a commercial driver's license. Plaintiff could not satisfy the contingency without first securing a SPE certificate.[2]

Plaintiff has offered no affidavit or document which rebuts Defendant's contention that Plaintiff could have proceeded with the training if he had obtained the SPE. Likewise, he has not presented any affidavit which demonstrates that non-disabled persons who did not meet the DOT's regulations were treated more favorably. (Exhibit 2, Toney Dep., pp. 264-66) Plaintiff has not carried his burden to demonstrate the existence of a genuine issue

---

[2] Under this analysis it is not necessary for the Court to discuss the additional requirement that Plaintiff also pass the drug-screening test. Plaintiff failed the drug-screening test and chose not to have the sample retested.

of material fact or to provide a basis sufficient to withstand a motion for summary judgment. See Patterson v. Gen. Motors, 451 U.S. 914 (1981). Conclusory allegations and subjective beliefs are "wholly insufficient evidence to establish a claim of discrimination as a matter of law." Mitchell v. Toledo Hospital, 964 F.2d 577, 585 (6th Cir. 1992).

Consequently, Toney fails to present facts sufficient to establish a prima facie case of disability discrimination, and therefore, summary judgment under the McDonnell Douglas approach is appropriate. Accordingly, Defendant's motion for summary judgment is hereby GRANTED and the complaint is dismissed in its entirety.

The same considerations that lead the Court to grant Defendant's motion for summary judgment in this case also compel the conclusion that any appeal as to those claims would be frivolous. Toney has failed to present any facts to support his claims of discrimination, and, accordingly, cannot make a good faith argument that a genuine issue of material fact exists for trial. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis.

The Sixth Circuit Court of Appeals decisions in McGore v. Wrigglesworth, 114 F.3d 601, 612-13 (6th Cir. 1997), and Callihan v. Schneider, 178 F.3d 800 (6th Cir. 1999), apply to any appeal filed by the Plaintiff in this case. If Plaintiff files a notice of appeal, he must pay the entire $455 filing fee required by 28

U.S.C. §§ 1913 and 1917,[3] or file a request for leave to appeal in forma pauperis by filing "within thirty days after service of the district court's decision as prescribed by Fed. R. App. P. 24(a)(4), a motion with [the Sixth Circuit] for leave to proceed as a pauper on appeal." Callihan, 178 F.3d at 803. Under Callihan, if the appellant does not within this thirty-day period either file the required motion or pay the filing fee, the appeal will be dismissed for want of prosecution. If the appeal is dismissed, it will not be reinstated once the fee is paid. Id. at 804.

SO ORDERED this 12th day of September, 2008.

/s/ JON PHIPPS McCALLA
UNITED STATES DISTRICT JUDGE

---

[3] The fee for docketing an appeal is $450. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the Clerk of the district court, by the appellant or petitioner.